UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD A. HARNEY,       ) <br>       ) <br>           Plaintiff    ) <br>       ) <br> v.       ) <br>       ) <br> SONY PICTURES TELEVISION, INC., ET AL.    ) <br>       ) <br>           Defendants    ) | CIVIL ACTION NO. <br><br> 10-11181-RWZ |

**REQUEST FOR ORAL ARGUMENT**

Plaintiff requests oral argument which he believes may assist the court with this Motion.

**PLAINTIFF'S OPPOSITION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.**   **Introduction:**

This is an action for copyright infringement for violation of Plaintiff, Donald A. Harney's exclusive rights to a photograph he took of Clark Rockefeller and his daughter, Reigh "Snooks" Rockefeller.  Harney alleges that Defendants, Sony Pictures Television, Inc. and A & E Television Networks, LLC (hereinafter both referred to as "Sony") used substantially similar copies of his photograph without plaintiff's permission or authority in a made-for-television movie, *Who is Clark Rockefeller?*, and in at least one television promotion for the movie.

Sony is attempting to characterize the copyright in Harney's photograph as thin, and therefore eligible for relief only in the case of virtually identical copying. (Sony's Memo p. 8.) Sony's argument is "thin" in that thin copyrights are reserved for things like compilations, including compilations of facts (telephone directories and information in the public domain), and to items found in nature (such as realistic-looking life size deer or a lifelike jeweled bee pin). As will be shown, Harney's copyright in the photograph is strong and his photograph should receive broad protection.

Sony admits it had access to plaintiff's photograph, and that it replicated a few elements of the image. As will be shown, Sony copied many elements of Harney's photograph, and it recreated Harney's photograph in two different versions. Both of the accused images have many elements that are substantially similar to Harney's original work.[1]

In the alternative, Sony is claiming that even if it infringed Mr. Harney's copyright, such use was fair use under §107 of the Copyright Act. The Fair Use section of the Copyright Act provides that the use of a copyrighted work for purposes such as criticism, comment, news reporting, teaching, scholarship or research is not an infringement of copyright. The statute lists four factors to be considered in determining whether the use was a fair use or an unfair infringement. As will be shown, Sony did not use the photograph for any of the delineated purposes in § 107, and it has not satisfied any of the four factors that the court needs to address. For these reasons, Sony's fair use defense should be denied as a matter of law.

---

[1] Attached to this Opposition are copies of the two derivative photographs that Sony used in the Movie. The photographs were supplied by the defendants. For comparison purposes, a copy of Harney's photograph is also attached. See, Affidavit of Andrew D. Epstein which is being submitted with this Opposition for authentication of these images.

**II.    Facts:**

**A.    Harney is a professional photographer who took a photograph that was first published on the front page of a Boston Neighborhood newspaper.**

Harney is a professional photographer who works full-time for the City of Boston where he photographs people and events of importance to the City.  Harney has worked for the City for 10 years and he has worked as a professional photographer for over 20 years.  (Harney Aff. ¶1.)  Harney also works on a part-time basis as a freelance photographer for other clients.  For several years, Harney was a freelance photographer and a regular contributor to the *Beacon Hill Times*, a Neighborhood newspaper published in Boston.  (Harney Aff. ¶2.)

In March 2007, Harney was asked by the *Beacon Hill Times* to take photographs of people in and around Boston's Beacon Hill Neighborhood for use in its newspaper.  On Sunday, April 1, 2007, Harney photographed a father and daughter as they were leaving church on Palm Sunday.  (Harney Aff. ¶3.)

Harney made several creative decisions in making his photograph.  He purposefully decided on his subjects; he selected the camera and wide-angle lens he used for the shot and the angle in which he was going to frame his subjects; he composed the photograph deciding what to include and what to exclude, and he used fill-in flash to separate the subjects from the background and to reduce the shadows on his subjects' faces.  In addition, even though he was using a digital camera with automatic features, he manually set the aperture to capture the subjects and the background, and he used the increased depth-of-field to keep them both in focus.  Finally, Harney digitally edited the photograph using Adobe Photoshop®, a professional editing software, to make sure that the image would be fully acceptable to his client.  (Harney Aff. ¶4.)

The resulting photograph was sufficiently original to be copyrightable. <u>Schiffer Publishing, Ltd. v. Chronicle Books, LLC</u>, 73 U.S.P.Q. 1090 (E.D. Pa. 2004) (Courts liberally extend copyright protection to even ordinary scenes if the photographer uses skill and judgment in arrangement, grouping and lighting.) <u>Gener-Villar v. Adcom Group, Inc.</u>, 560 F. Supp. 2d 112, 125-26 (D.P.R. 2008). (Photographer produced images, set lights, and manipulated and altered the raw photographs in Photoshop.)

Harney's photograph was published on the front page of the *Beacon Hill Times* in April 2007, with the caption, "Parishioners Clark and Reigh 'Snooks' Rockefeller of Pinckney Street celebrated Palm Sunday at the Church of the Advent on March 31."[2] (Harney Aff. ¶5.) Harney owns and continues to own the copyright to the Rockefeller photograph. (Harney Aff. ¶6; <u>see</u>, <u>also</u>, Certificate of Registration from the Copyright Office, No. VA-1-641-862, a copy of which is attached to the Complaint as Exhibit B.)

### B.   Rockefeller abducted his daughter during a court ordered child visitation session, and he was later sought by the police and the FBI for parental kidnapping.

In or around 2007, Clark Rockefeller and his ex-wife had apparently completed an acrimonious divorce. During a court authorized but supervised child visitation with Snooks, Rockefeller kidnapped his daughter and fled to Maryland. Shortly thereafter, law enforcement officials issued an arrest warrant for Rockefeller and an "Amber Alert" for the young girl. Either the Boston Police or the FBI copied Harney's photograph of Clark Rockefeller and his daughter and used it on a wanted poster to help find the young girl and apprehend Rockefeller. The photograph originally taken to feature the Beacon

---

[2] The caption in the newspaper is wrong. The photograph was actually taken on Sunday, April 1, 2007. (<u>See</u>, Harney Aff. ¶ 3.)

Hill Neighborhood was suddenly thrust into the national spotlight, and the story of Clark Rockefeller as an imposter, a con-man and a kidnapper became news.

Harney does not know exactly how the Boston Police or the FBI got a copy of the Photograph. He speculates that a Boston television station copied the image from the website of the *Beacon Hill Times*, and that the Boston Police or the FBI got the image from the television station. Harney can only speculate that his Photograph played a role in helping law enforcement agencies find Rockefeller and secure the return of his then kidnapped daughter. Harney does not believe that his Photograph helped law enforcement discover that Rockefeller was an imposter or a murder suspect or that he had been leading a secret existence for years as the Defendants state. (Harney Aff. ¶7.)

Sony produced a made-for-television movie (sometimes referred to herein as the "Movie") based on the Rockefeller story. (See, Exhibit A to Declaration of Anthony Armenise.[3]) Sony admits that it used Harney's photograph in the Movie but it claims that it only "minimally replicated a few elements" of the photograph. (Sony's Memo. p. 2.) Contrary to Sony's assertion, Harney maintains that this is a classic case of copying in which Sony not only had access to his photograph, but also that numerous elements of the copyrighted photograph were reproduced by Sony, and that there is substantial similarity between Harney's photograph and the two images recreated by Sony.

### C.     Sony's television movie is a semi-fictitious dramatization of the Clark Rockefeller story.

Sony's Movie is a dramatic interpretation that the defendants claim is "based on a true story." While the movie may be based on a true story, it is not a documentary. Since

---

[3] Several of the promos and trailers for the Movie which are reproduced on the video disk that was submitted to the court as Exhibit A to the Declaration of Anthony Armenise, state that the Movie was "based on a true story."

the Movie is a dramatization using actors in place of the true-life protagonists, Sony

needed to recreate Harney's photograph using the actors from the Movie in order to

integrate the photograph seamlessly into the Movie.

Accordingly, Sony recreated Harney's photograph by using the actors who played

Clark Rockefeller and Snooks in the same way as Harney did in his photograph. Sony

could have easily photographed the actors from a different angle, in different positions,

wearing different clothes, or even having the father hold his daughter in his arms or

standing by his side rather than perched on his shoulders. Sony could have staged the

accused photographs by having Clark on the right and Snooks on the left. Sony did not

have to have the father in its photograph smiling, and wearing a tie, just like Harney did

in his photograph. Sony did not have to have the father carrying some papers just as

Clark Rockefeller was doing in Harney's photograph. Sony did not have to depict the

young actress with blond hair, wearing a long, pink, dress-up coat draped over her knees,

just as Harney did in his photograph.

Both of Sony's photos depict the pink coat draped over the father's shoulders, just

as in the Harney photograph. In addition, in one of the Sony versions, Snooks is shown

with bangs just as she is in Harney's photo. Sony claims that the lack of bangs was a

distinguishing feature of the accused image. (Sony's Memo p. 6.) Sony did not have to

use virtually the same angle in its photographs as Harney used in his image. In fact, all

three photographs are cropped the same way, with the bottom of the frame ending just

below the father's shoulders. All of these similarities amount to more than the replication

of a "few elements" of Harney's copyrighted image. Clearly, Sony set out to copy

Harney's photograph by merely substituting actors for the real-life Clark Rockefeller and

Snooks. In the process, Sony made a substantially similar copy of Harney's image and infringed his copyright. While Mr. Harney believes that Sony's image is substantially similar to his, the ultimate question of copyright infringement is clearly a material fact for the jury.

**III.    Law:**

    **A.    Harney's photograph of Clark Rockefeller and his daughter is copyrightable subject matter:**

Harney's photograph is an original work of photographic art and it is fully protected under the Copyright Act. An original work is one that is both independently created, i.e., not copied, and creative. Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 345, 111 S. Ct. 1282, 1287, 113 L. Ed. 2d 358 (1991). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Id.

    1. Harney's copyright is not "thin," but rather broad.

Sony is attempting to characterize Harney's copyright as a "thin" rather than "broad." In order to prove infringement of a thin copyright, it is necessary to prove that the accused photograph is virtually identical to the preexisting image rather than just substantially similar. Sony is misconstruing the narrow line of cases that have dealt with so-called "thin" copyrights.

Thin copyrights are reserved for those instances where the spark of creativity is slight. For example, in Feist, supra, 499 U.S. at 350-52, the Supreme Court said that

> [N]o author may copyright facts or ideas. The copyright is limited to those aspects of the work-termed 'expression'- that display the stamp of the author's

originality. "[C]opyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original - for example ... facts, or materials in the public domain - as long as such use does not unfairly appropriate the author's original contributions." (citation omitted). "Facts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted. A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves.

In addition to compilations of facts, realistic depictions of animals may be subject to only thin copyright protection. See, for example, Satava v. Lowry, 323 F.3d 805, 812 (9th Cir.2003) (glass sculpture of jellyfish); Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1507 (9th Cir. 1987) (animal mannequins); Kamar International, Inc. v. Russ Berrie and Co., 657 F.2d 1059, 1061 (9th Cir. 1981) (stuffed toy animals). Harney's photograph, by comparison, is professional creative expression, which is entitled to full copyright protection.

2. Harney's photograph is not excluded under the "Merger" doctrine.

The concept of thinness is separate from, but related to the doctrine of merger, which was recently summarized in Yurman Designs v. PAJ, Inc., 262 F.3d 101 , 111-12 (2nd cir. 2001). "If there is just one way to express an idea, the idea and expression are said to merge, and the expression is not protectable. 'The test is whether protection of expression would inevitably accord protection to an idea.'" (citations omitted).

In general, the merger doctrine is most applicable where the idea and the expression are of items found in nature, or are found commonly in everyday life. See, e.g., Designer's View Inc. v. Publix Supermarkets, Inc., 764 F.Supp. 1473, 1478 (S.D.Fl. 1991). The merger doctrine was also invoked in Concrete Machinery Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 607 (1st cir. 1988), where the idea at issue was a

"realistic-looking life size deer;" see, also, Leigh v. Warner Brothers, Inc., 212 F.3d 1210, 1214-15 (11th cir. 2000) (photograph of statue in public domain); Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738 (9th Cir.1971) (pin of a "jeweled bee")  In the case of an embroidered tunic in Express, LLC v. Fetish Group, Inc., 424 F. Supp. 2d 1211, 1227 (C.D. Cal. 2006), the court found that the plaintiff had established some small amount of creativity beyond the standard combination of depicting stems and leaves, such that the tunic deserved thin copyright protection.  In Satava, supra, 323 F.3d at 810, the Ninth Circuit held that the artist "may not prevent others from copying aspects of his sculptures resulting from either jellyfish physiology or from their depiction in the glass-in-glass medium."  In Lucky Break Wishbone Corp. v. Sears, Roebuck & Co., 528 F. Supp. 2d 1106, 1123-25 (W.D. Wash. 2007) aff'd sub nom., Lucky Break Wishbone Corp. v. Sears Roebuck & Co., 373 F. App'x. 752 (9th Cir. 2010)., the Court upheld the copyright in a mass-produced plastic breakable turkey wishbone, because the molded treat was not an exact copy of a natural wishbone.  However, the Court concluded as a matter of law that Lucky Break's copyright is "thin."

It is clear that Harney's photograph is not a direct copy of something pre-existing in nature, but rather the product of creative decisions and choices, including subject matter, lighting, exposure and composition.

   3. Harney's photograph is original and therefore eligible for full
      copyright protection.

While there is no uniform test to determine a photograph's originality, several factors are often cited. These "[e]lements of originality ... include posing the subjects, lighting, angle, selection of film and camera and almost any other variant involved."

Rogers v. Koons, 960 F.2d 301, 307 (2d Cir.1992).  Other factors can include

arrangement of subject and accessories, evocation of desired expression, camera angle,

"carefully delineated selection of subject, posture, background, lighting, and perhaps

even perspective alone."  United States v. Hamilton, 583 F.2d 448, 452 (9th Cir.1978).

See, also, Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 60 (1884) ); Leibovitz

v. Paramount Pictures Corp., 137 F.3d 109, 116 (2d Cir.1998); and Schiffer Pub., Ltd. v.

Chronicle Books, LLC, 2004 WL 2583817 (E.D. Pa. 2004).  Indeed, Learned Hand stated

that "no photograph, however simple, can be unaffected by the personal influence of the

author." Jewelers' Circular Pub. Co. v. Keystone Pub. Co., 274 F. 932, 934 (S.D.N.Y.

1921).  This approach "has become the prevailing view," and therefore "almost any [ ]

photograph may claim the necessary originality to support a copyright merely by virtue

of the photographer's personal choice of subject matter, angle of photograph, lighting,

and determination of the precise time when the photograph is to be taken." 1 Melvin B.

Nimmer & David Nimmer, Nimmer on Copyright § 2.08[E][1], at 2-130 (2d ed.1999).

Because there is no question that Harney's photograph meets these basic requirements of

creativity, there is no question that Don Harney's photograph of Clark Rockefeller and

his daughter is copyrightable subject matter.

**B.     Elements of a copyright infringement action.**

1. Harney owns a valid copyright in the photograph.

To prevail on a claim of copyright infringement, a plaintiff must show two things:

(1) ownership of a valid copyright, and (2) unauthorized copying of the protected work

by the alleged infringer. Feist, supra, 499 U.S. at 361; Concrete Mach., supra., 843 F.2d

at 605.  Under § 410(c) of the Copyright Act, the Certificate of Registration constitutes

*prima facie* evidence of the validity of plaintiff's copyright.  CMM Cable Rep. Inc. v.

Ocean Coast Props., Inc., 97 F.3d 1504, 1513 (1st Cir. 1996).

> 2.  Sony engaged in the unauthorized copying of the protected work.

With respect to the second element, in the absence of direct evidence, copying

may be established by showing that the defendant had access to the copyrighted work and

that the allegedly infringing work is substantially similar to the copyrighted work.  Lotus

Development Corp. v. Borland Intern., Inc., 49 F.3d 807, 813 (1st Cir. 1995).

> a.  Sony had access to Harney's photograph.

Sony admits that it had access to Harney's photograph (Sony's Memo. p. 2.).

Therefore, the only requirement to prove infringement is to show that the two works are

substantially similar to each other.  This is a mixed question of fact and law.  O'Neill v.

Dell Publishing Co., Inc., 630 F.2d 685, 687.

> b.  The court must use the ordinary observer test to determine if
>     the accused work is substantially similar to the original work.

In deciding whether an accused work is substantially similar to the original work,

this circuit uses the so-called "ordinary observer" test.  "The test is whether the accused

work is so similar to the plaintiff's work that an ordinary reasonable person would

conclude that the defendant unlawfully appropriated the plaintiff's protected expression

by taking material of substance and value."  Concrete Machinery, supra, 843 F.2d at 609.

In order to apply the ordinary observer test, we must therefore only look at those aspects

of the work that constitute protected expression, that is, aspects of substance and value,

and discount those aspects of the work that are not protected under copyright law.

Ideas are not protected by copyright.  Only expression is protected.  Because of

this dichotomy between "idea" and "expression," only the "protected expression" is

relevant to an evaluation of substantial similarity.  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000).

Harney is not claiming copyright to the "idea" of taking a picture of a daughter sitting on her father's shoulders, but he is claiming copyright to the particular and unique photograph he took of Clark Rockefeller and his daughter on April 1, 2007.  All elements of Mr. Harney's expression as shown in his photograph are protected by copyright.  Clark and Snooks were coming from church on Palm Sunday.  While this is more obvious in Harney's photograph than in Sony's, Clark Rockefeller and the actor are clearly holding papers in both images.  Clark and Snooks are smiling in both the original picture and the accused copies.  In both the original picture and the copies, Clark is wearing a tie and Reigh is wearing her pink, "Sunday-best" long coat over her knees.  There are simply no unprotectable elements in this photograph that have to be eliminated in order to apply the ordinary observer test.

### C.    Sony has made an unfair use of Harney's photograph.

Sony claims that its use of Harney's photograph was fair use under Section 107 of the Copyright Act.  Section 107 reads as follows:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work . . . for purpose such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research is not an infringement of copyright.  In determining whether the use made of a work in any particular case is fair use, the factors to be considered shall include --
>
> > (1)  the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> > (2)  the nature of the copyrighted work;
> > (3)  the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> > (4)  the effect of the use upon the potential market for or value of the copyrighted work.

None of these factors is dispositive in and of itself. Rather, each should be considered by the court and weighed accordingly. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994).

    1.  Sony is attempting to use the fair use defense in order to avoid liability for copyright infringement.

Sony did not use Mr. Harney's photograph either for purposes of criticism, comment, news reporting, teaching, scholarship or research. Sony's attempt to characterize, *Who is Clark Rockefeller?*, as news or commentary is absurd. While the movie may be based partly on fact, it is entertainment, pure and simple.

Contrast, Fitzgerald v. CBS Broadcasting., Inc., 491 F. Supp. 2d 177, 184-5 (D. Mass. 2007), where Judge Gertner of this court found that the use by CBS on a news program of a photograph of convicted felon, Stephen (the "Rifleman") Flemmi was "news reporting" for fair use purposes. The court found that "[t]he Martorano sentencing itself was undisputably news, Flemmi's arrest was undisputedly related to the Martorano sentencing (as Martorano's alleged cooperation led in part to Flemmi's arrest), and CBS's reference to Flemmi followed that relationship. That is enough to establish CBS's use as "news reporting" for fair use purposes." Id. at 185. *Who is Clark Rockefeller?* is not news, despite the fact that some of the events depicted therein were at one point used in news reports.

After viewing the film, this court cannot determine as a matter of law that the Movie, although loosely based on fact, is commentary or news. At the very least, this is a material question of fact for the jury. (Meeropol v. Nizer, 560 F.2d 1061(2nd Cir 1977), *cert. denied*, 434 U.S. 1013, 98 Sup. Ct. 727, 54 L.Ed.2d 756 (1978)). In Sony's memo

(p. 9), defendants cite <u>Sony Corporation of America v. Universal City Studios, Inc</u>., 464 U.S. 417, 448 n. 31 (1984), in which Sony was a party. Sony admits that the House Report on §107 expressly states that fair use is an "equitable rule of reason" and that "each case raising the question must be decided on its own facts." Since Sony itself claims that it is a question of fact as to whether or not, *Who is Clark Rockefeller?*, is news or entertainment, this issue should best be left to the jury.

2. <u>This court must consider the four use factors under § 107 in determining whether the use made of Harney's photograph was a fair use or an infringement.</u>

(1) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

The first factor, purpose and character of the use, asks whether the original was copied in good faith to benefit the public or primarily for the commercial interests of the infringer. <u>See</u>, <u>MCA, Inc. v. Wilson</u>, 677 F.2d 180, 182 (2nd Cir. 1981) (knowing exploitation of a copyrighted work for personal gain militates against a finding of fair use.) The Supreme Court has held that copies made for commercial or profit-making purposes are presumptively unfair. <u>See</u>, <u>Sony Corp.</u>, <u>supra</u>, 464 U.S. at 449. The Court explained in a subsequent case that the "crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." <u>Harper & Row, Publishers, Inc. v. Nation Enterprises</u>, 471 U.S. 539, 562, 105 S.Ct. 2218, 2231, 85 L.Ed.2d 588 (1985). "Fair use exists to further the public interest in promotion of creative work. Thus, courts ask to what extent a defendant's use promotes only the defendant's own private interests -- i.e. whether it is 'commercial.' 'While commercial

motivation and fair use can exist side by side, the court may consider whether the alleged infringing use was primarily for public benefit or for private commercial gain.'" (citation omitted.) Fitzgerald, supra, 491 F. Supp. At 186.

Sony claims that only one out of 22 different television commercials that were created to promote the Movie uses one of the accused images. Sony also says that the accused image was used for less than one second. Sony suggests that this shows an absence of commercial exploitation of the accused photograph. This is nonsense.

Movie trailers are designed to entice viewers to watch movies. Trailers are action packed and dramatic and move quickly from scene to scene to pack in a lot of information in a short amount of time. Exhibit A to the Declaration of Anthony Armenise is a compilation of trailers and promotional advertisements for the Movie. Each of the almost two dozen promos, which vary in length from five to forty-five seconds, contain either dramatic or action sequences. Against this dramatic action background, it is understandable that the accused photograph appears for less than one second. (Sony's Facts ¶ 19) These trailers and promo clips do not evidence an absence of commercial exploitation but rather they show that Sony was actively promoting, *Who is Clark Rockefeller?*, so much so that it created 22 promos for the Movie.

Sony claims that its use of Mr. Harney's photograph was transformative because Sony added something new to Harney's image with a further purpose or different character, altering the first with new expression, meaning or message. (Memo p. 10)  In pursuit of this theory, Sony relies on Campbell v. Acuff-Rose Music Inc., 510 U.S. 569 (1994) and Nunez v. Caribbean International News Corp., 235 F.3d 18 (1st Cir. 2000).  In doing so, Sony is missing the basis of the first of the four fair use factors.

The decision in <u>Nunez</u> is instructive but not for the reasons Sony suggests.  In <u>Nunez</u>, the original photograph of the model was taken for portfolio purposes in order to advance the model's career.  When the model became Miss Puerto Rico Universe 1997, the newspaper reproduced the nude or semi-nude photograph in its newspaper.  The newspaper asked its readers to comment on whether or not the controversial nature of the photograph disqualified the model from representing Puerto Rico in the beauty pageant.  The newspaper used the photograph for a different purpose than the purpose for which it was taken.  The photograph was taken to be distributed to modeling agencies, exhibit the model's features and advance her career.  The newspaper used the photograph in a newsworthy way to question whether the model was fit to be Miss Puerto Rico.  The <u>Nunez</u> court found that the story would have been difficult to relate without depicting the photo in the paper.  In addition, the photos had already reached their intended market, because they had already been distributed to the modeling community.  Therefore there was no harm to the market for the photo.  In weighing these facts, the court found that the first factor weighed in favor of the newspaper's publication of the photo as a transformative and a fair use.

Arguably, there may have been a transformation with respect to Harney's photograph, but the transformation, if there was one, was made by the police or the FBI and not by Sony.  One could argue that the human interest father-daughter photograph was transformed by the police or FBI when they used it on a wanted poster.  Harney's photograph was used by the FBI, not for its inherent aesthetic and human interest value, but as part of a serious crime.

Unlike the police and FBI, Sony clearly did not use the photograph in a transformative manner. As is readily apparent from watching, *Who is Clark Rockefeller?*, Sony used the image to enhance the Movies' dramatic interpretation of the Clark Rockefeller saga. Gaylord v. United States, 595 F.3d 1364, 1374 (Fed. Cir. 2010) (fair use denied where US postage stamp did not have further purpose or different character from Korean War Memorial Sculpture and was used by Postal Service for commercial purposes.)

In Rogers v. Koons, 960 F.2d 301, 310 (2nd Cir. 1992), Koons, a well-known artist made a large glass sculpture from a photograph in which a man and a woman where depicted sitting on a bench holding a "string" of eight German Sheppard puppies. The court said,

> [i]f an infringement of copyrightable expression could be justified as fair use solely on the basis of the infringer's claim to a higher or different artistic use -- without insuring public awareness of the original work -- there would be no practicable boundary to the fair use defense. Koons' claim that his infringement of Rogers' work is fair use solely because he is acting within an artistic tradition of commenting upon the commonplace thus cannot be accepted. The rule's function is to insure that credit is given where credit is due.

The court held that Koons' copying of the photograph "Puppies" was done in bad faith, primarily for profit-making motives, and did not constitute a parody of the original work.

If there was a transformation, Harney's photograph was transformed into news by the police or the FBI, and not by Sony. Sony simply copied what was news and used it for profit-making motives. Thus, this factor cuts sharply in favor Harney.

(2) The nature of the copyrighted work;

This factor asks whether the work is factual or creative in nature. See Nunez, supra, 235 F. 3d at 23. Sony claims that Harney's photograph was factual in that it

captured a street scene as it occurred, and thus it is entitled to less protection than a creative work. (Sony's Memo p. 17-18)  As has been demonstrated, Harney put more effort into his photograph of the Rockefellers than might meet the eye.  He chose his subjects, chose his camera and lens combination, decided on the angle and content of the image, used fill-in flash to reduce shadows, and manually set the aperture in order to increase his depth of field and to keep the foreground and background in focus.  While Harney's photograph may have captured a particular moment in time in the life of the Rockefellers, his creative expression is what is protected by copyright.  This factor tilts decidedly in favor of Harney.

> (3)  The Amount and substantiality of the portion used in relation to the copyrighted work as a whole;

Contrary to the defendants' claims, Sony reproduced substantially the entirety of Mr. Harney's photograph.  The similarities are extensive.

| Harney's Photograph | Sony's Copy (version 1) | Sony's Copy (version 2) |
|---|---|---|
| All 3 images are taken from basically the same eye-level angle. There is slightly more background in the Harney photograph than in the Sony images. | The angle is virtually identical in all 3 images. The photo is cropped in a substantially similar way. | The angle is virtually identical in all 3 images. The photo is cropped in a substantially similar way. |
| In all 3 images, Clark and Snooks are smiling and looking at the camera. Clark is wearing a jacket and tie and Snooks is wearing a long pink dress-up coat that hangs over her legs and part of Clark's shoulders. Snooks is sitting on Clark's Shoulder to the right of the image. Clark is carrying some Church related papers in his hand. Snooks is carrying a palm frond. Snooks bangs are clearly evident. | In both of Sony's pictures, the actors are smiling and looking at the camera. The actor playing Clark is wearing a tie, and the actress playing Snooks is wearing a long pink dress-up coat that is draped over her legs and part of the actor's shoulder. The actor is carrying some papers in his hand the same way that Clark is in Harney's photo. | Version 2 is slightly different from Version 1 because the actress who plays Snooks appears to be sitting on both of her father's shoulders rather than sitting of his left side. The actress' bangs are much more evident in this photo. Sony pointed to the lack of bangs as a significant difference between its image and Harney's photograph. See, Sony Memo (p. 6). |

Since Sony admits that it set out to replicate elements of Harney's photograph, it is understandable why there is so much similarity between the images. The main difference between the images is that Sony's rendition is devoid of anything related to Palm Sunday; there is no church in the background, the actor portraying Clark is carrying nondescript papers instead of papers from the church, and the actress playing Snooks is not carrying a palm frond. Discounting the fact that two different people appear in the photographs and that the photographs have been secularized, the images are virtually identical. Thus, this factor strongly leans in favor of Harney.

> (4) The effect of the use upon the potential market for or value of the copyrighted work.

In support of its Motion, Sony includes numerous exhibits including an article from the January 2009 issue of *Vanity Fair* magazine entitled, "The Man in the Rockefeller Suit." (See, Sony's Exhibit 7, page 6 of 35.) The *Vanity Fair* article contains a number of pictures including Harney's image of Clark Rockefeller and his daughter (page 6 of the article). Don Harney was given credit for the photograph. *Vanity Fair* contacted Mr. Harney in advance for permission to use this image in the story, and Mr. Harney was paid a licensing fee for its use. (Harney Aff. ¶8.) Sony should have done what *Vanity Fair* did. Vanity Fair paid for the right to use the image; Sony did not.

Sony's use of the photograph is paradigmatic of the only market the photograph could reasonably have; licensing to media outlets. There is no significant demand for 8x10 glossies of Clark Rockefeller and his daughter sold directly to the public. Surely, neither Rockefeller nor his daughter needs a photographic reminder of this episode in their lives. The market for media licenses for these photographs clearly exists, and it is the only market in which the photographs have seen use outside of the wanted poster and

pure news reporting.  In fact, Harney was contacted again in September 2010, for permission to use his photograph in a book about Rockefeller.  (Harney Aff. ¶8.)  If the Court finds that Sony's use was fair use, then these media uses -- and uses like them in the future -- would also be fair use, destroying the only potential market that exists for the photograph.  The market for residual use of photographs is exactly the kind of market that copyright is meant to protect.  See, Fitzgerald, supra, 491 F. Supp. 2d at 189.  Thus the fourth factor weighs against fair use and in favor of Harney.

**V.      Conclusion:**

Plaintiff asks this court to find as a matter of law, that Harney's photograph of Clark Rockefeller is entitled to full copyright protection, and that Sony did not make a fair use of this image.  Accordingly, Defendants' Motion for Summary Judgment should be denied.

DONALD A. HARNEY,
By his attorney,

October 5, 2010

/s Andrew D. Epstein
Andrew D. Epstein, Esquire (BBO #155140)
Barker, Epstein & Loscocco
10 Winthrop Square
Boston, MA  02110
Tel: (617) 482-4900
FAX: (617) 426-5251
Photolaw@aol.com

## Certificate of Service

I hereby certify that on October 5, 2010, the forgoing document and all attachments thereto, were filed through the court's ECF system and will be sent electronically to the registered participants that are identified on the Notice of Electronic Filing, and paper copies will be served via first class mail to those indicated as non-registered participants, if any.

/s Andrew D. Epstein

October 5, 2010                                Andrew D. Epstein

Photograph of Clark Rockefeller and his daughter, Reigh ("Snooks")
taken by Donald A. Harney



**© 2007 Donald Harney**

Accused photograph used by Sony Pictures Television, Inc. in
the Made-for-television movie, Who is Clark Rockefeller?

Version 1



SPE0000002

Accused photograph used by Sony Pictures Television, Inc. in
the made-for-television movie, Who is Clark Rockefeller?

Version 2



SPE0000001