UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD A. HARNEY, | ) |
|                 Plaintiff, | ) Civil Action No. 10-11181-RWZ |
| vs. | ) |
| SONY PICTURES TELEVISION, INC. and<br>A & E TELEVISION NETWORKS, LLC, | ) **Leave to file Reply Memorandum granted on October 12, 2010** |
|                 Defendants. | )<br>) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Sony Pictures Television Inc. ("Sony Pictures") and A&E Television Networks, LLC ("AETN") respectfully submit this reply memorandum to respond to Plaintiff Donald A. Harney's Opposition to Summary Judgment ("Opp.").

Mr. Harney's opposition papers underscore that this case is ripe for summary judgment dismissing the Complaint. ***First***, the issues identified in his Rule 56.1 statement either are not materially disputed (¶¶ 1, 3, 6, 7) or, by comparing Mr. Harney's photograph (the "Photo") to the Sony Pictures-created image ("Sony Pictures Image") used in *Who Is Clark Rockefeller?* (the "Movie"), can be decided by this Court as a matter of law (¶¶ 2, 4, 5). SJ Mem. 5-7.[1]

***Second***, Mr. Harney misapprehends the scope of protection for the Photo and its relevance to the fair use analysis. Opp. 7-10. The Photo depicts two people whom Mr. Harney neither costumed, posed nor otherwise directed in a street scene he did not stage or set. The Sony Pictures Image did not copy any of the Photo's arguably protectable elements (such as angle, lighting, focus, camera selection and exposure). For these reasons, Mr. Harney's copyright in the Photo is "thin" and the scope of fair use is correspondingly broad.

---

[1] Mr. Harney emphasizes the penumbral purposes listed in 17 U.S.C. § 107 as if they were exclusive. He then asserts that this Court cannot determine whether the Movie falls within those purposes on this motion. Opp. 13. Both arguments are incorrect. The examples listed in Section 107 are "illustrative and not limitive," *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994), and "docudramas" such as the Movie readily fit within the types of anticipated uses as a matter of law. *E.g.*, *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 615 (2d Cir. 2006) (use of poster in book celebrating popular rock band was fair); *Calkins v. Playboy Enter. Int'l, Inc.*, 561 F. Supp. 2d 1136, 1144 (E.D. Cal. 2008) (use of photo in centerfold feature of Playboy magazine was fair).

*Third*, as to fair use, the Photo was transformed in three ways. The parties have no dispute at all as to the first two: (1) the transformative (and fair) use by law enforcement, Opp. 16-17; Keller Decl., Ex. 11, and (2) the Sony Pictures Image replication, but not reproduction, of the Photo, solely to evoke it, Opp. 6, 19. That leaves the third transformation, the way the Movie used the Sony Pictures Image. Mr. Harney argues that use was not transformative, Opp. 17, but it is undisputed that the Movie used that image to accurately retell law enforcement's initial and transformative use as part of the Rockefeller manhunt. That was not the aesthetic purpose for which Mr. Harney took the Photo. Mr. Harney is unable to explain why that, too, is not also transformative and fair.

*Finally*, it now also is undisputed as a factual matter that, as anticipated, SJ Mem. 14-17, the creation and use in the Movie of the Sony Pictures Image has in no way impaired Mr. Harney's licensing market for the Photo. Harney Aff. ¶ 8. As a "one off" use tailored to the Movie, it is no substitute for the original.

### A. Mr. Harney's Photo Enjoys Only "Thin" Protection.

Mr. Harney fails adequately to address either the "thinness" of his copyright in the Photo or its relevance to fair use. He does not dispute that Sony Pictures did not reproduce the Photo, as more typically occurs in copyright cases involving photographs. Rather, it used the Sony Pictures Image, which replicated almost nothing in the Photo except a smiling blonde girl on a man's shoulders and her pink coat. SJ Mem. 6-7.

Mr. Harney, however, enjoys no rights with respect to those elements because

they are unprotectable. SJ Mem. 7-8. He neither acknowledges nor addresses this, focusing instead on cases involving "facts" and realistic depictions of animals as setting the boundaries of thin copyrights. Opp. 7-9. Those decisions involve extreme examples of "thin" copyrights and do not set threshold requirements for the filtering out of unprotectable elements. Multiple cases hold that when a photographer does not contribute props, costumes, poses or other elements to a photograph of a subject, the copyrightable elements are reduced to angle, lighting background and a few other elements. SJ Mem. 7-8. Mr. Harney either does not cite or does not attempt to distinguish any of these cases.

Put simply, whatever rights Mr. Harney has in the Photo do not extend to the depiction of the individuals as he found them. A smiling girl, wearing a pink coat, facing the camera as she sits astride a man's shoulders all are details over which Mr. Harney had no choice. Opp. 12. That is what is meant by his having only a "thin" copyright in the Photo.[2] Indeed, when Mr. Harney describes what he believes to be his creative decisions, he lists the selection of Clark and Reigh, camera equipment, composition, lighting, aperture and cropping. Harney Aff. ¶ 4. He thus implicitly concedes, as the cases all hold, that only these details of the image in the Photo are protectable. SJ Mem. 7-8.

---

[2] Mr. Harney's focus on whether the Photo is copyrightable at all, Opp. 9-10, is misplaced. The question is whether Sony Pictures copied the protectable elements of the Photo, such as angle, lighting, background and props. A simple comparison of the Photo and the Sony Pictures Image shows it did not. Similarly, Mr. Harney's invocation of the merger doctrine, *id.* at 8-9, is inapt because Defendants do not move for summary judgment on the basis that the "idea" underlying the Photo merged with its expression.

Sony Pictures, however, used its own equipment, chose its own angles and lighting, selected a different background, "secularized" the image (to use Mr. Harney's term) and positioned the actors somewhat differently. *Id.* at 6-7. None of the elements over which Mr. Harney asserts he made creative decisions was replicated. Not only does this provide the equitable "lens" through which this entire case should be viewed, *id.* at 8-9, but it is directly relevant to both the second and third fair use factors, the nature of the work (replete with uncopyrightable elements) and the amount and substantiality of the protectable elements of the Photo that appear in the Sony Pictures Image, *id.* at 17-20.

### B. Mr. Harney Does Not Explain How Law Enforcement's Use Was Transformative But The Movie's Report On That Use Was Not.

Mr. Harney publicly declared the Photo was "***the picture*** that was used to capture [Clark] Rockefeller." Keller Decl., Ex. 2 (emphasis added). That it was enlarged and used as an exhibit at Clark Rockefeller's highly publicized criminal trial, Keller Decl., Ex. 5. at pp. 47-48, underscores the extent to which it was "the picture" symbolizing not only the manhunt but also, more generally, the Clark Rockefeller story. Mr. Harney cannot avoid summary judgment by now saying he actually has "no idea" whether the Photo played a role in "helping" the FBI, because that is an immaterial distinction. Harney Aff. ¶ 7. The undisputed fact is that law enforcement used the Photo not for its "aesthetic" value, but as part of a nationwide manhunt, and that such use was transformative. Opp. 16-17; Keller Decl., Exs. 2, 5, 11.

Mr. Harney argues, however, that the Movie's use of the Sony Pictures Image was not transformative because it was part of a profit-making venture. Opp. 17. Mr.

4

Harney's focus on profits is entirely misplaced.  Nothing in the record supports that Sony Pictures commercially exploited the Photo specifically for the purpose of increasing revenues.[3]  SJ Mem. 13-14.  Rather, the role the Photo played was one fact among many that were used to recount the true story of the manhunt, making it an indistinguishable, "ordinary part of a profit-making venture." *Nunez*, 235 F.3d at 22.  Mr. Harney asserts that running multiple promotional spots for the Movie – in which the Sony Pictures Image ***does not appear*** – somehow constitutes "commercial exploitation" of the Photo.  Opp. 15.  This makes no sense.  The question is whether the copyrighted work itself was exploited in the advertising.  Here, there is no genuine dispute.  Such exploitation did not occur.  SJ Mem. 13-14; Armenise Decl., Ex. A.

Moreover, *Nunez*, *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006), and *Calkins v. Playboy Enter. Int'l, Inc.*, 561 F. Supp. 2d 1136 (E.D. Cal. 2008), all hold that truly transformative uses are fair, even in a commercial context.  SJ Mem. 11-12.  Mr. Harney cites *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), Opp. 14, for the proposition that commercial uses are presumptively unfair.  That is incorrect.  The Court subsequently emphasized that commerciality does

---

[3] Mr. Harney does not explain how Sony Pictures' use was any more profit-oriented than the publication of the Photo by countless media organizations – only one of which, *Vanity Fair*, with his permission.  Opp. 19.  The profit-oriented nature of news reporting has been recognized in many cases, including *Nunez*. *See Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22 (1st Cir. 2000) (newspaper "used the photograph not only as an ordinary part of a profit-making venture, but with emphasis in an attempt to increase its revenue").  Moreover, it is well-settled that motion pictures are fully protected First Amendment speech, even when undertaken for profit.  SJ Mem. 9.

not carry "presumptive force against a finding of fairness." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584-85 (1994).[4]

Because the "transformative" nature of a work must be analyzed apart from any "profit" inquiry, it is significant that Mr. Harney cannot explain his assertion that the Movie did not use the Sony Pictures Image in a transformative way. All he says on this point is that the image "enhance[d]" the Movie's retelling of the Clark Rockefeller story, Opp. 17, completely ignoring that, by definition, this confirms the image was a small part of a much larger copyrightable work.[5]

Even accepting the "enhance[ment]" point as true, that does not address the undisputed three different transformations. In the ordinary fair use case, only one meaningful transformation is required. Here there are several, including one that resulted in something other the actual image being used. That makes this, in effect, an *a fortiori* situation and, under the rationale of *Nunez*, *Bill Graham* and *Calkins* (none of which are distinguishable on this point), a fair use finding follows. Those cases (and others) also demonstrate that the fact the Movie was distributed by a commercial television network plays a very limited role in determining whether the use was fair. SJ Mem. 13.

---

[4] For the record, Sony Pictures Television was not a party in *Sony Corp.* It was decided long before Sony Pictures Television's business was acquired by Sony Corporation in 1989.

[5] *Gaylord v. United States*, 595 F.3d 1364 (Fed. Cir. 2010), cited by Mr. Harney, emphasizes that incorporation of a copyrighted work into a larger commentary on a subject is a paradigmatic, favored transformation. *Id.* at 1373. That is exactly what the Movie does with the Sony Pictures Image.

Mr. Harney's own discussion of *Nunez*, Opp. 16, only underscores that a use is transformative and fair when the copyrighted work is an important part of telling a newsworthy story, as was the case here. There is no genuine dispute that (1) the Sony Pictures Image was used only to depict law enforcement's use of the Photo and (2) the earlier use was itself transformative. It also is undisputed that, more than a year before the abduction, Mr. Harney took the Photo only for its "aesthetic and human interest value." Opp. 16; *see also* Keller Decl., Ex. 2. Those are reasons completely unrelated to how and why law enforcement later made use of the Photo and, by definition, completely unrelated to the Movie's use of the Sony Pictures Image to retell that law enforcement story. Sony Pictures' use adds something new, was for a different function or purpose than Mr. Harney's Photo when taken, and it is, therefore, transformative.

### C.     There Is No Market Harm.

Mr. Harney's opposition confirms that the uniquely tailored Sony Pictures Image (suitable only for use in the Movie) has not harmed his licensing markets. Opp. 19-20; *cf.* SJ Mem. 14-17. As *Gaylord v. United States*, 595 F.3d 1364 (Fed. Cir. 2010), makes clear, where a use is not a "suitable substitute" for the original work, the market harm "factor favors fair use." *Id.* at 1375. Other than his not being paid a license fee by Sony Pictures, Mr. Harney points to no evidence of market harm due to the Movie's use of the Sony Pictures Image, nor could he. The Sony Pictures Image depicts the actors in the Movie, not the real life Clark and Reigh, and Mr. Harney still receives requests to license the Photo. Harney Aff. ¶ 8. Accordingly, this factor weighs heavily in favor of fair use.

## **CONCLUSION**

For the reasons set forth above and in their original Memorandum, Defendants respectfully request that the Court grant their motion for summary judgment.

Dated:  October 12, 2010
           New York, New York

                                              Respectfully submitted,

                                              DEBEVOISE & PLIMPTON LLP

                                              By:  /s/ Bruce P. Keller
                                                     Bruce P. Keller (BBO #264980)

                                              919 Third Avenue
                                              New York, New York 10022
                                              (212) 909-6000

                                              *Attorneys for Defendants Sony Pictures Television Inc. and A&E Television Networks, LLC*

## CERTIFICATE OF SERVICE

      I, Bruce P. Keller, member of the firm Debevoise & Plimpton LLP, hereby certify that on October 12, 2010, I caused a true and correct copy of the foregoing Reply Memorandum In Further Support Of Defendants' Motion For Summary Judgment to be served electronically upon Andrew D. Epstein, Esq., attorney for Donald A. Harney, via the Court's ECF system at the following email address:

      Andrew D. Epstein, Esq.
      Barker, Epstein & Loscocco
      10 Winthrop Square
      Boston, MA  02110
      Photolaw@aol.com

      Pursuant to 28 U.S.C. § 1746, I certify under the penalty of perjury that the foregoing is true and correct.

      Executed on October 12, 2010.

      /s/ Bruce P. Keller
      Bruce P. Keller