UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD A. HARNEY, ) | |
| Plaintiff, ) | Civil Action No. 10-11181-RWZ |
| vs. ) | |
| SONY PICTURES TELEVISION, INC. and ) A & E TELEVISION NETWORKS, LLC, | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO RECOVER ATTORNEYS' FEES AND EXPENSES**

Defendants Sony Pictures Television Inc. ("Sony Pictures") and A&E Television Networks, LLC ("AETN") respectfully submit this memorandum in support of their motion, pursuant to Federal Rule of Civil Procedure 54(d)(2)(A) and 17 U.S.C. § 505, for an award of the attorneys' fees and expenses they have incurred in defending this copyright action.  Plaintiff Donald A. Harney brought this action based on objectively unreasonable claims that trigger such an award.  Defendants seek $91,898.42 in attorneys' fees and related disbursements they incurred in demonstrating those weaknesses to the Court.

## BACKGROUND

Mr. Harney filed his Complaint on July 14, 2010, alleging that Defendants had copied his copyrighted photograph in the made-for-television motion picture *Who Is Clark Rockefeller?* (the "Movie"). (Dkt # 1.) Defendants filed an Answer denying Mr. Harney's claims. (Dkt # 5.) A few weeks later, to avoid the costs of unnecessary discovery, they moved for summary judgment.

That motion was predicated on the appearance of the image used in the Movie itself (the "Image")[1] and the context in which the Image appeared: It was used to recount the manhunt for the man who called himself Clark Rockefeller. Because the Image replicated only those elements of Mr. Harney's photograph in which he could own no copyright and otherwise was not similar in copyrightable detail, Defendants contended it could not possibly infringe. (Dkt # 13 at 6-9.) Further, in the event the Court found the minimal replication in the Image amounted to actionable copying for purposes of the Copyright Act (and it did not), the Image was a protected fair use under well-settled First Circuit case law. (*Id.* at 9-20.)

On May 12, 2011, this Court granted Defendants' motion for summary judgment. It held the Image was not substantially similar with respect to protectable elements of Mr.

---

[1]   Defendants did not use Mr. Harney's photograph in the Movie; they only used the Image.

2

Harney's photograph (Dkt # 24) and therefore did not reach Defendants' fair use defense. The Court entered judgment in favor of Defendants on May 13, 2011. (Dkt # 25.)[2]

## ARGUMENT

I.  **This Case Warrants An Award Of Attorneys' Fees And Expenses Under The Copyright Act.**

Section 505 of the Copyright Act permits "full costs" and attorneys' fees to be awarded to prevailing parties in actions brought under the Copyright Act. 17 U.S.C. § 505.[3] Fee shifting under § 505 "is to be applied in an 'evenhanded manner' whether the prevailing party was aligned as the plaintiff or the defendant." *Zamoyski v. Fifty-Six Hope Road Music Ltd., Inc.*, -- F. Supp. 2d --, 2011 WL 442106, at *2 (D. Mass. Feb. 4, 2011) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)) (awarding attorneys' fees and costs to prevailing defendant); *see also Invessys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16, 21-22 (1st Cir. 2004) (same); *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1998) (same); *Edwards v. Red Farm Studio Co.*, 109 F.3d 80, 83 (1st Cir. 1997) (same).

In exercising discretion under § 505, a district court should be guided by equitable considerations such as "frivolousness," "objective unreasonableness" and "the need … to

---

[2] Defendants understand that Mr. Harney filed a notice of appeal on or about June 9, 2011. This Court retains jurisdiction, however, to decide Defendants' motion for attorneys' fees and costs. *See United States v. Hurley*, 63, F.3d 1, 23 (1st Cir. 1995) ("A district court may … determine attorneys' fees after an appeal has been taken….").

[3] Mr. Harney's Complaint alleged two counts of copyright infringement, one against each Defendant. (Dkt #1 at ¶¶ 8-14.) Both counts were based on the same operative facts.

advance considerations of compensation and deterrence." *See Fogerty*, 510 U.S. at 534 n.19.  An award of attorney's fees is particularly appropriate when a party is forced to defend against "objectively weak" copyright claims.  *Garcia-Goyco v. Law Environmental Consultants, Inc.*, 428 F.3d 14, 20 (1st Cir. 2005); *see also Matthews*, 157 F.3d at 29 ("Depending on other circumstances, a district court could conclude that the losing party should pay even if all of the arguments it made were reasonable."); *Quaglia v. Bravo Networks*, Civ. No. 04-10460-RWZ, 2006 WL 2691686, at *1 (D. Mass. Sept. 19, 2006) (Zobel, J.) ("[D]ishonesty is not required for an award; even a case that is merely objectively quite weak can warrant such an award.") (quoting *Invessys*, 369 F.3d at 20-21).

Mr. Harney's copyright infringement claims in this case were, at best, "objectively weak," *Garcia-Goyco*, 428 F.3d at 20, for two reasons.  First, there was no basis for bringing this action in the first place:  As the Court properly found, the Image replicates only the basic factual (and unprotectable) elements in Mr. Harney's photograph. (Dkt # 24 at 4-5.)  There are, as the Court found, "a huge number of differences" between the works.  (Tr. 27:2-3.)  That forced Mr. Harney at oral argument to contend that the Court could not consider these differences, but was required only to focus on the similarities between the works.  Such an argument is more than objectively weak – it is directly foreclosed by well-settled First Circuit case law.

Second, even setting aside the numerous differences between the works, the First Circuit's decision in *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000), all but compelled dismissal in this case.  Mr. Harney responded to *Nunez* (and its fair use

analysis) by taking the extraordinary position that because *less* than his complete photograph had been reproduced by the Defendants (including different looking actors from the Movie and dissimilarities in background, lighting, positioning of the subjects and virtually every other copyrightable element in Mr. Harney's photograph), that was infringement. According to Mr. Harney, copying the photograph in full, as in *Nunez*, was required to escape liability. This illogical position was, at best, unreasonable.

Finally, policy considerations of deterrence and compensation weigh strongly in favor of awarding fees and costs in this case. Although Mr. Harney's claims were objectively weak, the result he sought would have had far-reaching consequences. Had Mr. Harney succeeded in this action, he would have severely impaired the ability of filmmakers to create motion pictures based on real-life events. Filmmakers like the Defendants are entitled to rely on the Supreme Court's guidance in this area. They should not be held hostage to copyright owners who threaten to bring federal copyright actions based on objectively weak claims.

### A. Mr. Harney's Position That The Court Could Not Consider The Numerous Differences Between The Works Was Objectively Unreasonable.

At oral argument, the Court identified a significant number of differences between Mr. Harney's photograph and the Image. (Tr. 27:2-31:6.) Among other things, the Court pointed out "distinct[]" differences in the backgrounds of the two works, the expressions on the faces of the people in the works, the clothing worn by the little girls in the works and the different hand positions and religious articles held by the people in the works. (*Id.*)

Faced with these considerable differences, Mr. Harney took the position that, in determining substantial similarity, the Court was required to ignore these differences and had to consider ***only*** the similarities between the two works:[4]

> THE COURT: So, I don't ever look at the differences; I look entirely at the similarities?
>
> MR. EPSTEIN: Only at the similarities, and the cases are very clear on that point.

(Tr. 28:5-8.)

That is directly contradicted by First Circuit precedent. The First Circuit has specifically held that the "key" to the substantial similarity analysis is whether an ordinary observer would be disposed to overlook any "disparities" between the works. *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir. 2005); *see also Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 37 n.7 (1st Cir. 2001) (affirming finding, on summary judgment, that there was no substantial similarity and focusing on "the significant differences" between the works).

Where, as here, the disparities are so pronounced that no ordinary observer would be disposed to overlook them, there can be no substantial similarity. *Johnson*, 409 F.3d at 18. By misstating the relevant legal standard, Mr. Harney confirmed the objectively unreasonable nature of his claims. *Quaglia*, 2006 WL 2691686, at *1 (awarding fees and

---

[4] Mr. Harney also took the totally unsupported position that the entire background of his photo – which included a church steeple and bare trees against a brilliant blue sky, thereby providing context for the Palm Sunday frond held by the girl and the church program held by the man – was "not a major feature" of the photo. (Tr. 31:15-17.)

costs where "plaintiff argued for a copyright protection that was clearly outside the scope of what the law allows").

On a more fundamental level, that the works are "distinctly different" in many respects (Tr. 26:25-31:6) itself weighs in favor of an award of fees and costs. In granting Defendants' motion for summary judgment, the Court correctly held that the Image reflected only "limited sharing" of the "factual content" from Mr. Harney's photograph, but did not copy any of the "expressive elements." (Dkt # 24 at 4-5.) The Court held this was an "insufficient basis … to find substantial similarity." (*Id.*)

In *Quaglia*, this Court awarded fees where the "plaintiff's claim that there was 'substantial similarity' … was objectively unreasonable." *Quagia*, 2006 WL 2691686, at *1; *see also Matthews*, 157 F.3d at 29 (affirming fee award to defendants where plaintiff failed to establish substantial similarity, explaining that the plaintiff had tried "to extend her copyright protection far beyond what is allowed by law"). The same reasoning applies here. The "limited sharing" of basic factual information from the photo that is reflected in the Image – the positioning of a little girl atop her father's shoulders – simply is an insufficient basis for bringing a copyright infringement claim.

### B.   Mr. Harney Made Illogical, Unreasonable Arguments To Avoid The Effect Of Controlling First Circuit Precedent.

Mr. Harney claimed that Defendants' use of the Image, which he conceded only replicated certain elements in his photograph, infringed his copyright in the photograph. (Dkt #1 at ¶¶ 8-14; Tr. 29:9-30:22.) At oral argument, however, he took the position that

had Defendants used the entirety of his *actual* photograph in the Movie, it would have been a protected fair use. (Tr. 33:7-35:22.)

Mr. Harney was forced to take this illogical position because the First Circuit's decision in *Nunez* foreclosed his claims from the outset. *Nunez* held that when a copyrighted photograph itself becomes newsworthy, its use in connection with the telling of the newsworthy story is a protected fair use. *Nunez*, 235 F.3d at 22-23.

At oral argument, Mr. Harney clearly recognized the need to distinguish *Nunez*. (Tr. 35:10-12 ("If you take a look at *Nunez*, which my brother relies on emphatically, they used the original photograph."); *Id.* at 33:12-13 (the FBI "used the original. That's what separates this case….") As the Court observed, however, the argument that Mr. Harney concocted – that use of his actual photograph was lawful but that a dissimilar replication infringed – makes no sense: "I must say, the logic of using the original with impunity, as you describe, but not another copied version – another version of the original, having the second one infringe and the first one not strikes – I don't follow it." (Tr. 35:18-22.)

It was objectively unreasonable to maintain this action in light of *Nunez*. It was even worse to advance unreasonable, illogical arguments in an obvious attempt to circumvent binding First Circuit precedent. Mr. Harney engaged in quintessentially "objectively unreasonable" behavior and that supports an award of fees under section 505 of the Copyright Act. *See, e.g.*, *Quagia*, 2006 WL 2691686, at *1.

### C. Policy Considerations Warrant An Award Of Fees In This Case.

As Defendants explained at oral argument, the differences between Mr. Harney's photograph and the Image are entirely consistent with, and reflect an effort to abide by, the Supreme Court's guidance in this area. (Tr. at 25:13-15 ("[W]hen the Supreme Court says it is a fair use to conjure up no more than necessary to evoke the original, people act on that language."); *id.* at 47:19-21 ("[T]hat we used no more than necessary puts us well within the scope of what the Supreme Court said in *Campbell* [*v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)] is allowed to be done.").)

Regardless whether a motion picture is made by a large studio or a small independent artist, filmmakers, such as Defendants, should not have their speech chilled by the prospect of having to defend meritless copyright infringement lawsuits every time they create a motion picture based on real-life events. *See Edwards*, 109 F.3d at 83 (noting the "important role played by copyright defendants – preventing copyright owners from restricting rightful publications" and awarding fees to defendant) (internal quotation marks omitted).

Simply put, having been forced to incur not inconsiderable expenses defending against these "objectively weak" claims, *Garcia-Goyco*, 428 F.3d at 20, Defendants are entitled to be reimbursed for their reasonable attorneys' fees and costs. This will serve both to compensate Defendants for their expenses and to deter copyright holders, like Mr. Harney, from bringing similarly meritless lawsuits in the future. *See Fogerty*, 510 U.S. at 534 n.19 (in awarding fees and costs, courts should consider "the need … to advance considerations of compensation and deterrence").

**II.     The Amount Of Attorneys' Fees And Expenses Requested Is Reasonable And Well-Supported.**

In determining the amount of attorneys' fees to be awarded, district courts employ a lodestar analysis, in which counsel's reasonably hourly rate is multiplied by the number of hours worked.  *See Invessys, Inc. v. McGraw-Hill Cos., Inc.*, Civ. No. 01-12048-GAO, 2003 WL 21696545, at *2 (D. Mass. May 27, 2003) (citing *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001)).  Courts evaluate whether the tasks performed were necessary and whether they were performed efficiently.  *Gay Officers*, 247 F.3d at 295.  Whether counsel's hourly rate is reasonable is determined by reference to the prevailing market rate, "taking into account the qualifications, experience, and specialized competence of the attorneys involved."  *Id.*

Recoverable costs include all disbursements made by counsel that are ordinarily billed directly to the client separately from the hourly fee.  *See Invessys*, 369 F.3d at 22; *Data General Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 321, 368 (D. Mass. 1993) (prevailing party "may recover out-of-pocket expenses incurred by its attorney and customarily billed directly to the client," such as courier service, computer research, local travel, meals, telephone, postage and parking).

Defendants seek $91,898.42 in attorneys' fees and costs dating from the filing of this action to present.  As explained in the supporting Declaration of Bruce P. Keller, this amount is based on the billing attorneys' reasonable hourly rates and time spent on performing necessary tasks.  During the course of the litigation, Defendants were represented by two attorneys from the law firm of Debevoise & Plimpton LLP, Bruce P. Keller, Esq. and Michael J. Beam, Esq.

Mr. Keller is a partner at Debevoise & Plimpton LLP who graduated from Boston University School of Law in 1979 and has many years of experience litigating copyright cases in courts around the country. He is the Chair of the firm's Intellectual Property Litigation practice, the co-author of, among other publications, *Copyright Law: A Practitioner's Guide*, published by the Practicing Law Institute and has taught copyright and related subjects at the Berkman Center for Internet and Society at Harvard Law School. He is recognized by industry sources as an experienced practitioner in the areas of copyright and other intellectual property litigation. (*See* Keller Decl. ¶ 2.) Mr. Keller billed at a reasonable hourly rate of $650 per hour for his work on this matter, which represents a discount to his usual rate.

Mr. Beam is an associate at Debevoise & Plimpton LLP who graduated law school in 2005 and has experience litigating complex civil cases, including copyright cases and other intellectual property cases, in courts around the country. Mr. Beam billed at a reasonable hourly rate of $460 per hour for his work on this matter, which represents a discount to his usual rate.

As more fully set forth in the accompanying Declaration of Bruce P. Keller, the attorneys' fees and costs sought by Defendants are reasonable, particularly in light of the important issues raised in this case and the early disposition of the matter. They are well-documented by the billing records of Debevoise & Plimpton LLP.

## **CONCLUSION**

Accordingly, for the reasons set forth above, Defendants respectfully request that the Court grant their motion to recover attorneys' fees and expenses.

Dated: June 16, 2011
      New York, New York

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: /s/ Bruce P. Keller
    Bruce P. Keller (BBO #264980)

919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants Sony Pictures Television Inc. and A&E Television Networks, LLC*

## CERTIFICATE OF SERVICE

I, Bruce P. Keller, member of the firm Debevoise & Plimpton LLP, hereby certify that on June 16, 2011, I caused a true and correct copy of the foregoing Memorandum in Support of Defendants' Motion to Recover Attorneys' Fees and Expenses to be served electronically upon Andrew D. Epstein, Esq., attorney for Donald A. Harney, via the Court's ECF system at the following email address:

>Andrew D. Epstein, Esq.
>Barker, Epstein & Loscocco
>10 Winthrop Square
>Boston, MA  02110
>Photolaw@aol.com

Pursuant to 28 U.S.C. § 1746, I certify under the penalty of perjury that the foregoing is true and correct.

Executed on June 16, 2011.

>/s/ Bruce P. Keller
>Bruce P. Keller